# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NORTHEASTERN DIVISION

JACKIE EMERTON,          )
           )
      **Plaintiff,**      )
           )    **Civil Action No. 2:12-cv-00020**
   **v.**           )    **Judge Nixon / Knowles**
           )
CAROLYN W. COLVIN,     )
**Acting Commissioner of Social Security,**[1]  )
           )
      **Defendant.**     )

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 15. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 19.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin should therefore be substituted for Commissioner Michael J. Astrue as the Defendant in this action. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

## I. INTRODUCTION

Plaintiff filed his application for Disability Insurance Benefits ("DIB") on May 19, 2009, alleging that he had been disabled since March 3, 2009, due to diabetes, COPD, osteoarthritis, gastritis, scrotal mass, "back outs," [*sic*] "hand and legs goes [*sic*] numb," and back pain. *See, e.g.,* Docket No. 11, Attachment ("TR"), pp. 118, 129. Plaintiff's application was denied both initially (TR 61) and upon reconsideration (TR 62). Plaintiff subsequently requested (TR 76) and received (TR 86) a hearing. Plaintiff's hearing was conducted on September 16, 2010, by Administrative Law Judge ("ALJ") James A. Sparks. TR 40. Plaintiff and vocational expert ("VE"), Dr. Ernest Brewer, appeared and testified. *Id.*

On October 22, 2010, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 28-35. Specifically, the ALJ made the following findings of fact:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2014.

2. The claimant has not engaged in substantial gainful activity since March 3, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following impairments, the combination of which is severe: diabetes mellitus; chronic obstructive pulmonary disease; arthralgia (multi-joint); gastroesophageal reflux disease; carpal tunnel syndrome; history of scrotal mass; and syncope (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

2

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations.  The claimant is limited to "frequent" handling (gross manipulation) for the right hand.  He must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc.

6.    The claimant is capable of performing past relevant work as a shipping/receiving clerk (and/or pulling parts) in a factory.

7.    The claimant has not been under a disability, as defined in the Social Security Act, from March 3, 2009, through the date of this decision (20 CFR 404.1520(f)).

TR 30-35.

On November 15, 2010, Plaintiff timely filed a request for review of the hearing decision. TR 24.  On January 31, 2012, the Appeals Council issued a letter declining to review the case (TR1-4), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction.  42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive.  *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record.  Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

3

**A.  Standard of Review**

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process.  *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991).  The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision.  *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion."  *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences.  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached.  *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).  However, if the Commissioner did not consider the record as a whole, the Commissioner's conclusion is undermined.  *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence:

(1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[2] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.

---

[2] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

5

(4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and

nonsevere.  *See* 42 U.S.C. § 423(d)(2)(B).

<h3 style="text-align:center">C.  Plaintiff's Statement Of Errors</h3>

Plaintiff contends that the ALJ erred by: (1) failing to address Plaintiff's mental retardation and find him disabled under Listing 12.05C; (2) rejecting the opinion of Dr. Richard Rutherford, Plaintiff's treating physician; and (3) discounting Plaintiff's subjective complaints of pain.  Docket No.16.  Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded.  *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking."  *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).  Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.  *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994).  *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

## 1. Listing 12.05C:  Mental Retardation

Plaintiff contends that the ALJ should have found him to be disabled under Listing 12.05C, "Mental Retardation," but that the ALJ erroneously failed to even address Plaintiff's mental retardation in his decision.  Docket No. 16 at 18-20.  Plaintiff also argues that the ALJ

7

did not properly consider a report made by psychological examiner Jerrel Killian, or the testing contained therein. *Id.* Plaintiff contends that had the ALJ properly considered Mr. Killian's report, that report, in combination with Plaintiff's school records and his other exertional and nonexertional limitations, would have been sufficient to show that Plaintiff met Listing 12.05C. *Id.*

Defendant responds that the ALJ properly found that Plaintiff did not have a severe mental impairment, much less meet Listing 12.05C. Docket No. 19 at 11-14. Specifically, Defendant notes that the ALJ "straightforwardly explained, 'The claimant does not have the gravity of symptoms nor medical documentation in order to establish an impairment of Listing-level severity.'" *Id.* Defendant contends that the ALJ not only considered Mr. Killian's report, but explicitly discussed it and appropriately found that Mr. Killian's report should not be accorded any weight, as it was based upon incomplete information. *Id.* at 12. Defendant also contends that poor school performance does not demonstrate mental retardation because other factors may affect academic learning, such as an unsettled home environment or poor school attendance. *Id.* at 12. Defendant further asserts that Plaintiff's school records do not establish either that Plaintiff's "problems with intelligence" were of the requisite severity, or that his intellectual deficits, as defined in the Act and regulations, manifested prior to age 22. *Id.* at 12-13. Defendant notes that Plaintiff performed gainful activity beginning at age 18 or 19, which is during the developmental period, demonstrating that Plaintiff was capable of working and was not mentally retarded prior to age 22. *Id.* at 13. Defendant concludes that substantial evidence supports the ALJ's determination that Plaintiff did not meet Listing 12.05C. *Id.* at 14.

The ALJ in the case at bar determined that Plaintiff did have a combination of

impairments that was severe, he ultimately determined that Plaintiff did not have an impairment or combination that met or medically equaled a Listing. TR 30. The ALJ explained, "The claimant does not have the gravity of symptoms nor medical documentation in order to establish an impairment of listing level severity." *Id.*

With regard to Listing 12.05C, "Mental Retardation," the Code of Federal Regulations states:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

20 C.F.R., Pt. 404, Subpt. P, App. 1, Listing12.05C.

As can be seen, the Regulations explicitly state that in order to meet Listing 12.05C, Plaintiff must show *all* of the following: (1) *significantly* subaverage general intellectual functioning *with deficits in adaptive functioning* that manifested *before* age 22; (2) a valid IQ score between 60 and 70; *and* (3) a physical or other mental impairment that imposes an *additional* and *significant* work-related limitation of function. *Id.* (Emphasis added.)

As noted, Plaintiff argues that the ALJ failed to address Plaintiff's mental retardation and failed to properly consider Mr. Killian's report and the testing contained therein. Docket No. 16.

9

Plaintiff contends that an old IQ test and poor school performance show that he had "problems with intelligence" before age 22. *Id.* at 19. With regard to the old IQ test to which Plaintiff refers, Plaintiff was assessed with an IQ of 78, well above the requisite 60 to 70 IQ range specified in Listing 12.05C. *See* TR 180. Regarding Plaintiff's schooling, the ALJ noted that Plaintiff "described being in special education classes in school and said he can only read little words." TR 32. Significantly, although Plaintiff contends that he had "problems with intelligence," meeting or equaling Listing 12.05C requires more than just "problems." There is no indication in the record that Plaintiff has been officially diagnosed with a specific mental impairment, but any such diagnosis of mental impairment must be supported by acceptable clinical signs, laboratory findings, or test results. *See, e.g.*, *Moon v. Sullivan*, 923 F.2d 1175, 1182-1183 (6th Cir. 1990). Thus, Plaintiff's school records alone cannot support a finding that he was intellectually impaired prior to age 22.

Additionally, as noted above, there is no indication in the record that Plaintiff was diagnosed with a mental impairment, much less the requisite additional mental impairment. With regard to Plaintiff's physical impairments, the ALJ found that none of Plaintiff's alleged physical ailments were severe enough to cause the required "significant work-related limitation." TR 31-35; 20 C.F.R., Pt. 404, Subpt. P, App. 1, Listing 12.05C. As will be discussed in greater detail below, the ALJ specifically addressed the medical evidence relating to Plaintiff's complaints of arthritis, numbness, pain, and respiratory problems, and determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. TR 31-35. The ALJ noted that, "[a] review of the evidence reveals that the claimant has not generally received the type of medical treatment one would expect for a

10

totally disabled individual." TR 32. The ALJ also stated:

> Although the claimant has received various forms of treatment for his allegedly disabling symptoms, which would normally weigh somewhat in his favor, the record also reveals that the treatment has been generally successful in controlling those symptoms. He has not required hospitalization or surgery. In addition, the claimant has been prescribed and has taken appropriate medications for his alleged impairments, which also weighs in his favor. Moreover, the medical records reveal that the medications have been relatively effective in controlling the claimant's symptoms.

TR 33.

Because Plaintiff cannot establish that he suffered from significantly subaverage general intellectual functioning with deficits in adaptive functioning that manifested before age 22, an IQ between 60 and 70, or a physical or other mental impairment that imposed an additional and significant work-related limitation of function, he cannot prevail on this claim.

Moreover, while Plaintiff argues that the ALJ did not properly consider Mr. Killian's report and the testing therein, the ALJ stated of Mr. Killian's report as follows:

> Donna Simpson, attorney, referred the claimant to Jerell F. Killian, M.S., Senior Psychological Examiner. This psychologist opined that at the claimant's level of functioning, it is not likely he can participate in work that would allow circumvention of "significant physical limitations" (Ex. 18F). Notably, this opinion is not a medical opinion, but rather an administrative finding dispositive of a case, which requires familiarity with the Regulations and legal standards set forth therein. Such issues are reserved to the Commissioner, who cannot abdicate his statutory responsibility to determine the ultimate issue of disability. Opinions on issues reserved to the Commissioner can never be entitled to controlling weight, but must be carefully considered to determine the extent to which they are supported by the record as a whole or contradicted by persuasive evidence (20 CFR 404.1527 (d)(2) and 416. 927 (d)(2); SSR 96-5p). As this opinion is not supported by the record as a whole, the undersigned declines to accord it any weight.

Case 2:12-cv-00020   Document 20   Filed 08/22/13   Page 11 of 28 PageID #: 583

TR 34-35, *citing* TR 460-61.

Since the ALJ found that Dr. Killian's assessment was not supported by the record as a whole, he appropriately declined to accord it weight. *See* TR 34-35. Further, even if Dr. Killian's opinion had been entitled to some weight, his opinion alone does not establish that Plaintiff's mental impairment manifested before the age of 22, as Dr. Killian evaluated Plaintiff when he was 46 years old. TR 460. While the results of intelligence testing during adulthood can be presumed to reflect lifelong cognitive functioning in the absence of evidence to the contrary, in this case, as noted above, Plaintiff's childhood IQ score was 78, out of the requisite 60 to 70 IQ range for meeting Listing 12.05C. TR 180. Additionally, Dr. Killian's opinion contradicted that of Plaintiff's treating physician, who did not identify any cognitive limitations, and that of consultative examiner, Dr. Keown, who found Plaintiff's cognitive abilities to be within normal range. TR 227-44, 256-354, 367, 380-405, 422-59, 465-83.

The ALJ properly evaluated the evidence of record and determined that Plaintiff did not meet or medically equal the requirements for a Listing; Plaintiff's argument fails.

**2. Weight Accorded to Opinion of Plaintiff's Treating Physician**

Plaintiff next maintains that the ALJ erred in rejecting the March 6, 2010 Medical Source Statement opinion of his treating physician, Dr. Richard Rutherford. Docket No. 16 at 20-23. Specifically, Plaintiff contends that the ALJ did not consider the entirety of the medical evidence and discredited Dr. Rutherford's opinion based on the fact that his opinion was inconsistent with MRI results. *Id*. at 23. Plaintiff also contends that the ALJ failed to discuss Plaintiff's EMG results, and Dr. Rutherford's treatment of Plaintiff's pulmonary and hand problems. *Id*. Lastly, Plaintiff argues that the ALJ should not have accorded great weight to Dr. Carolyn Parrish's

12

assessment, as she did not examine Plaintiff. *Id.*

Defendant responds that the ALJ properly weighed Dr. Rutherford's assessment, accepted the portions he found to be supported by the record, and rejected the portions he found to be  unsupported by the record.  Docket No.19 at 14-18.  Specifically, Defendant notes that the ALJ accepted that Plaintiff must not work in certain environments due to COPD.  *Id.* at 15. Defendant also notes that the ALJ "determined an RFC more generous to Plaintiff" than was Dr. Rutherford's opinion regarding Plaintiff's "limited handling due to CTS."  *Id.*  Defendant further argues that the ALJ presented good reasons for not accepting Dr. Rutherford's opinion regarding Plaintiff's limitations: notably, that this opinion was inconsistent with his treatment notes and with other medical evidence, and that, although Dr. Rutherford's opinion was "sympathetic" to Plaintiff, it was unsupported by evidence.  *Id.* at 14-17.  With regard to the evidence Plaintiff complains the ALJ did not consider, Defendant argues that: (1) the ALJ's decision was consistent with the specialists' findings and treatment recommendations; (2) there is no EMG in the record during the relevant period for the ALJ to have considered; (3) the ALJ properly considered the MRI at issue because MRI diagnostic imaging is more precise than less definitive x-rays; (4) the ALJ "mirrored treating Nurse Smith's December 2009 report finding of a negative diabetic neuropathy finding"; and (5) the nerve study was "diagnostic and did not document functioning."  *Id.* at 16-17.  Defendant also argues that it was appropriate for the ALJ to consider and accept Dr. Parrish's findings, as those findings were consistent with other evidence of record.  *Id*. at 17.

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.

(1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.

(2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...

(3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...

(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
. . .

20 C.F.R. § 416.927(d) (emphasis added). *See also* 20 C.F.R. § 404.1527(d).

14

The ALJ must articulate the reasons underlying his decision to give a medical opinion a specific amount of weight.[3] *See, e.g.,* 20 C.F.R. § 404.1527(d); *Allen v. Commissioner*, 561 F.3d 646 (6th Cir. 2009); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). The reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight the ALJ gave to the treating source medical opinion and the reasons for that weight. SSR 96-2p.

The Sixth Circuit has held that, "provided that they are based on sufficient medical data, the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are un-contradicted, complete deference." *Howard v. Commissioner*, 276 F.3d 235, 240 (6th Cir. 2002)(*quoting Harris v. Heckler*, 756 F.3d 431, 435 (6th Cir. 1985)). If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 C.F.R. § 404.1502.

Dr. Rutherford treated Plaintiff for an extensive period of time, a fact that would justify

---

[3] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 C.F.R. §1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record. *See, e.g., Friend v. Commissioner*, 375 Fed. Appx. 543, 551 (6th Cir. April 28, 2010); *Nelson v. Commissioner*, 195 Fed. Appx. 462, 470-72 (6th Cir. 2006); *Hall v. Commissioner*, 148 Fed. Appx. 456, 464 (6th Cir. 2006).

15

the ALJ's according greater weight to his opinion than to other opinions, as long as that opinion

was supported by medically acceptable clinical and laboratory diagnostic techniques, and

consistent with the evidence of record. TR 227-44, 256-354, 380-405, 422-59, 465-83. Dr.

Rutherford's opinion, however, contradicts other substantial evidence in the record, including

Plaintiff's MRI results, x-rays results, a respiratory consultation, and Dr. Rutherford's own

treatment notes. TR 34, *citing* TR 415-21, 422-59. The ALJ specifically addressed the

inconsistencies between Dr. Rutherford's opinion at issue, as articulated in his Medical Source

Statement, and other medical evidence of record as follows:

> Dr. Rutherford submitted a medical source stated [*sic*] of ability to
> do work-related activities (physical) for the claimant, dated March
> 6, 2010. Dr. Rutherford opined the claimant was limited to
> lifting/carrying 20 pounds occasionally and less than 10 pounds
> frequently. He could stand at least two hours in an eight-hour
> workday and sit less than about six hours in an eight-hour
> workday. He would need to alternate sitting and standing
> periodically to relieve pain or discomfort. Pulling and pushing in
> upper and lower extremities is affected. The claimant could never
> climb, balance, kneel, crouch, or crawl. He also has environmental
> restrictions (Ex. 17F).

> The undersigned does not find Dr. Rutherford's determinations
> credible with regard to the claimant's ability to do work-related
> activities. His conclusions are inconsistent with his office
> treatment notes and are not supported by objective medical
> findings, including the MRI scans and X-rays. In addition, there
> was a (December 2009) respiratory consultation report noting a
> slightly improved condition. The specialist also reported that the
> claimant was not fully compliant and continued to contribute to his
> condition by smoking about 10 to 12 cigarettes a day. Therefore,
> the claimant was counseled about starting Chantix for aid with
> smoking cessation (Exhibit 16F). However, in March 2010, the
> specialist related that the claimant stated he was not interested in
> smoking cessation and planned to continue.

> Additionally, one might expect to see some indication in Dr.
> Rutherford's treating records of restrictions placed on the claimant.

16

Yet a review of the record in this case reveals no restrictions recommended by Dr. Rutherford. Consequently, Dr. Rutherford's assessment is over-restrictive, and thus internally inconsistent. His conclusions appear sympathetic to the claimant's subjective complaints and they are unsupported by the objective findings. Accordingly, the undersigned does not accept Dr. Rutherford's conclusions with regard to the claimant's residual functional capacity. Social Security Ruling 96-6p.

TR 33, *citing* TR 415-21, 422-59.

The ALJ also found Dr. Rutherford's assessment to be inconsistent with Dr. Donita Keown's consultative examination and the findings of State agency medical consultant, Dr. Carolyn Parrish. TR 34, *citing* TR 365-69, 406-14. The ALJ addressed this inconsistency, stating:

Donita Keown, M.D., performed a consultative examination in July 2009. Dr. Keown noted that the claimant smelled strongly of tobacco smoke. He did a brief expiratory wheeze and his lung fields were otherwise clear. His heart had a regular rhythm and rate. The claimant had full range of motion in the digits of the left and right hands, with no active synovitis, no ulnar deviation. His wrist joints dorsiflex and palmar flex were 70 degrees. The elbows flexed and extended 170 and 0 degrees, supinate and pronate 80 degrees. His shoulders forward elevated and abducted to 175 degrees. His hips flexed to 120 degrees, internally and externally rotated 40 and 50 degrees. The knees flexed and extended to 155 and 0 degrees. For the ankles, the dorsiflex and plantar flex were 25 and 50 degrees. For spinal range of motion, the C-spine rotation left and right was 80 degrees, with flexion and extension 75 degrees. The claimant did not exhibit scoliosis or spasm. For the thoracolumbar column, dorsiflexion was 90 degrees, extension 25 degrees. Lateral flexion left and right was 30 degrees. SLRs were negative. The claimant had a quick-paced straightaway walk, tandem step, one-foot stand and Romberg. No difficulties were observed walking on toes or heels (Ex. 10F).

The diagnostic impression was noninsulin-dependent diabetes mellitus (controlled); chronic obstructive pulmonary disease (COPD) of mild severity; tobacco abuse; multi-joint arthralgia, stable; gastroesophageal reflux disease, stable; benign scrotal mass

17

by history; and syncope versus pre-syncope secondary to cough. Dr. Keown stated that the chronic low back pain was likely due to chronic strain versus early degenerative disease.

*Dr. Keown opined that the claimant could be expected to sit, stand, walk, lift, and carry without restrictions.* Further, he was not using nor would he require a hand-held assistive device to aid ambulation. Dr. Keown's determinations are credible because they are supported by objective medical findings and are consistent with the record as a whole. Accordingly, the undersigned accepts her conclusions with regard to the claimant's residual functional capacity.

Furthermore, a state agency medical consultant, Carolyn M. Parrish, M.D., reviewed the claimant's medical records in October 2009. Dr. Parrish's findings also support a finding of "not disabled." Although this medical consultant was non-examining, and therefore her opinion does not, as a general matter, deserve as much weight as those of examining or treating physicians, Dr. Parrish's opinion does deserve *some* weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions (as explained throughout this decision). *Dr. Parrish determined that no exertional or postural limitations were established.* In handling (gross manipulation, right hand), the claimant is limited to "frequent" due to carpal tunnel syndrome. He must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. (Ex. 15F).

TR 34, *citing* TR 365-69, 406-14 (emphasis original).

As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above. *Id.* When the opinions are inconsistent with each other, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. 20 C.F.R. § 416.927(e)(2). Because Dr. Rutherford's opinion was inconsistent

18

with his own treatment notes and with other evidence of record, the Regulations do not mandate that the ALJ accord Dr. Rutherford's Medical Source Statement opinion controlling weight. Accordingly, Plaintiff's argument that the ALJ did not properly weigh Dr. Rutherford's report fails.

Although Plaintiff states that the ALJ "failed to note the EMG that indicated significant problems," the EMG was not from the relevant period, and, in fact, actually stated that "[t]his isolated upper extremity motor finding is of *unclear clinical significance*." Docket No. 16 at 23; TR 350 (emphasis added). As to Plaintiff's assertion that the ALJ did not consider Dr. Rutherford's treatment of Plaintiff's pulmonary problems, the ALJ specifically discussed Plaintiff's respiratory complaints, as will be shown below. Docket No. 16 at 23; TR 32. As will also be discussed below, the ALJ explicitly discussed Plaintiff's carpal tunnel syndrome. TR 32. The ALJ considered these ailments along with the entirety of the evidence, and concluded that Plaintiff's ailments seemed to be well-controlled by medication, undermining Plaintiff's assertion that he is disabled. TR 33.

Contrary to Plaintiff's assertion that the ALJ erroneously weighed the opinion of non-examining consultant, Dr. Parrish, the ALJ addressed Dr. Parrish's opinion as follows:

> Furthermore, a state agency medical consultant, Carolyn M. Parrish, M.D., reviewed the claimant's medical records in October 2009. Dr. Parrish's findings also support a finding of "not disabled." Although this medical consultant was non-examining, and therefore her opinion does not, as a general matter, deserve as much weight as those of examining or treating physicians, Dr. Parrish's opinion does deserve *some* weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions (as explained throughout this decision). *Dr. Parrish determined that no exertional or postural limitations were established.* In handling (gross manipulation, right hand), the claimant is limited to "frequent" due to carpal tunnel syndrome.

19

He must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. (Ex. 15F).

The undersigned accepts these conclusions and Dr. Parrish's opinion is afforded great weight. Findings of fact made by State agency medical professionals regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence by a non-examining source (SSR 96-6p).

TR. 34 (emphasis original).

*Reynolds v. Secretary of H.H.S.*, 707 F.2d 927, 930 (6th Cir. 1983) establishes that while the ALJ is not bound by the opinion of a non-examining physician, he may consider such an opinion in making his disability determination. The ALJ acknowledged that, as a non-examining consultant, Dr. Parrish's opinion would not generally be accorded as much weight as examining or treating physicians. TR 34. The ALJ explained, however, his reasoning for according her opinion great weight in the case at bar. *Id.* As discussed above, Dr. Parrish's opinion was consistent with other medical evidence in the record, and the ALJ appropriately explained his rationale for according her opinion "great weight." *Id.* Accordingly, Plaintiff's argument fails.


### 3. Subjective Complaints of Pain

Lastly, Plaintiff contends that in finding that his subjective complaints were not fully credible, the ALJ did not appropriately address his complaints of debilitating pain. Docket No. 19 at 23-25. Specifically, Plaintiff argues that his complaints were supported by the facts that he sought medical treatment and that he complained to his physicians. *Id.* at 23-24. Plaintiff also contends that his complaints to his physicians were consistent with his hearing testimony. *Id.* at 23-24. Plaintiff further argues that, although the ALJ referenced 20 CFR 416.929(c)(2), he did not fully discuss or adequately apply those factors to the case at bar. *Id.* at 25. Plaintiff

additionally argues that the ALJ did not consider that Plaintiff's statements were consistent with Dr. Rutherford's opinion. *Id.*

Defendant responds that the ALJ considered all of the evidence and sufficiently explained his finding that Plaintiff's subjective complaints were not fully credible. Docket No. 19 at 18-20.

Specifically, Defendant argues that the ALJ observed and discussed inconsistencies between Plaintiff's medical record and Plaintiff's complaints, and that these inconsistencies support the ALJ's credibility determination. *Id.*

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations of pain:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24) (Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled...."); and *Moon*, 923 F.2d at 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."). Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a debilitating degree that it prevents an individual from engaging in substantial gainful activity." *Bradley v. Secretary*, 862 F.2d 1224,

1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

In the case at bar, the ALJ discussed Plaintiff's subjective complaints of, *inter alia*, disabling pain, arthritis, numbness, back problems, respiratory problems, and a scrotal mass. TR 31. Discussing Plaintiff's testimony and subjective complaints, the ALJ articulated:

> At the hearing, the claimant testified that crippling arthritis in his hands and problems in his lungs keep him from working now; and he takes medication for his symptoms. He stated that he has pain in his hands, shoulders, and back. The claimant asserted that a doctor told him to take over-the-counter Aleve before any pain medication would be increased. Moreover, the claimant stated his pain is not relieved; the medication only knocks the edge off it. He said he could walk about 15 or 20 feet before he gives out and has to stop and rest and use an inhaler. He could stand 10 to 15 minutes; but his back gets numb on the right side. He could bend, stoop, or squat as long as he does not do it a lot. He declared he has been restricted to lifting five pounds. The claimant estimated he could sit in a straight chair for 20 minutes. The claimant testified that at the hearing, his right leg was numb and "burns just

22

like fire." He alleged that he has problems sleeping. The claimant rated his pain as a "six" on an average day *on a scale of 1 to 10 with "10" being the worst pain* he could imagine. The claimant revealed that he can dress and bathe himself without help. He said his girlfriend does the cooking; and he could probably fix himself a bologna sandwich. Further, on an average day he does basically nothing (except maybe walk outside or talk to a neighbor for 15 to 20 minutes). He watches television and tends to his dog. He contended that cold weather affects his hands and shoulders; and his feet always stay cold.

. . . He admitted he has been a smoker and is down to two cigarettes a day (beginning the prior three weeks) from a pack and a half to three packs a day. He stated he takes breathing treatments every four hours consisting of breathing medicine through a machine. In addition, he takes about four medications. The claimant maintained he has shortness of breath if he walks or does anything. He testified that he tries to use a riding mower for about 15 minutes before he has to rest and go inside. He explained that his right leg goes numb from the knee up. The claimant described being in special education classes in school and said he can only read little words. The claimant additionally alleged that: (1) with his left shoulder, he cannot reach behind his back; (2) he can lift a gallon of milk if he uses two fingers; and (3) the index fingers work in both hands, but all of the other fingers and thumbs lock up when he tries to use them.

TR 31-32, *citing* TR 188, *referencing* TR 40-56 (emphasis original).

Discussing the medical records relating to Plaintiff's subjective complaints, the ALJ stated:

. . . The medical records reflect that in September 2006, an MRI scan of the claimant's lumbar spine showed normal results. The paraspinous soft tissues were normal. The vertebral bodies, intervertebral disc spaces, central canal, and conus medullaris were normal. There was no evidence of a herniated disc (Ex. 13F). An X-ray series (of three views) of the lumbar spine in June 2009 showed the disc spaces to be well maintained. There was no spondylolisthesis or spondylolysis. There were no fractures or bony destructive lesions (Ex. 9F). The result of another MRI scan of the lumbar spine in September 2009 was normal; and an X-ray showed only mild degenerative arthritis (Ex. 14F, p. 17). A

physical examination, in March 2010, indicated the claimant's spine was non-tender (Ex. 19F).

A review of the evidence reveals that the claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. There is some evidence of carpal tunnel syndrome. In December 2007, nerve conduction studies of both median and both ulnar nerves were performed. The results showed some abnormal neuropathies. The right ulnar compound muscle action potential amplitude was abnormal, which was of unclear clinical significance. The summary asked that the treating physician review the analysis in the context of the patient's history and clinical findings (Ex. 7F, p. 95).

In March 2009, the claimant complained of a little shortness of breath and said he was told 10 years prior that he had one dead lung (Ex. 7F, p. 9). However, March 2009 pulmonary tests, by a spirometry, suggested only mild obstructive pulmonary disease. The claimant's lung volume and diffusing capacity were normal (Ex. 7F, p. 99; Ex. 8F, p. 5). A chest X-ray showed a normal silhouette. The lungs were clear; and the osseous structures were unremarkable. There were two pulmonary nodules (Ex. 8F, p. 6). A respiratory consultation revealed the claimant has moderate chronic obstructive pulmonary disease, with associated emphysema. It was recommended that the claimant discontinue smoking as the single-most important component in his treatment regimen. Advair, an inhaled steroid, was added. In addition, he was encouraged to get into at least a mild fitness program (to include walking at least a half-hour a day) (Ex. 12F). In December 2009, Symbicort was substituted for Advair. The claimant was prescribed a nebulizer and supplies (Ex. 16F).

Infomation in the medical records (from August 2009) indicates the claimant lost about 40 pounds after his diagnosis of diabetes. Medical records indicate he has had good blood sugar control (Ex. 12F). Richard T. Rutherford, M.D., primary care physician, prescribed Metformin 500mg for the claimant. The claimant's blood sugar test results (hgb A1C) of 5.9 are good (Ex. 14F). He underwent nerve conduction tests that revealed no evidence of neuropathy (Ex. 16F).

After an examination in April 2009, the results of a urologist's examination of a scrotal mass revealed a little calcification or cystic lesion on the tail of the epididymus, likely a benign lesion.

24

> The claimant was given the option of having it removed, but the doctor did not recommend it. The claimant responded that he would wait and see if the lesion resolved on its own. (Ex. 6F).
>
> Although the claimant has received various forms of treatment for his allegedly disabling symptoms, which would normally weigh somewhat in his favor, the record also reveals that the treatment has been generally successful in controlling those symptoms. He has not required hospitalization or surgery. In addition, the claimant has been prescribed and has taken appropriate medications for his alleged impairments, which also weighs in his favor. Moreover, the medical records reveal that the medications have been relatively effective in controlling the claimant's symptoms.

TR 31-33, *citing* TR 253-55, 264, 350, 354, 359, 360, 363-64, 396, 374-77, 378-79, 380-405, 415-21, 462-64.

While Plaintiff argues that his complaints were supported by the facts that he sought medical treatment and that he complained to his physicians, simply seeking medical treatment and complaining to physicians does not render him credible for purposes of a disability determination. For disability purposes, there must be a medically determinable mental or physical impairment which can be expected to last for at least twelve consecutive months, and the medically determinable impairment must be supported by acceptable clinical signs, laboratory findings, or test results. 42 USC § 423(d)(1)(A); *Moon*, 923 F.2d at 1182-83. Plaintiff also contends that his complaints to his physicians were consistent with his hearing testimony, but the consistency of Plaintiff's reported complaints to physicians with his hearing testimony likewise is insufficient to render him credible for disability purposes, and both are Plaintiff's own reports, unsubstantiated by acceptable clinical signs, laboratory findings, or test results.

Although Plaintiff argues that the ALJ did not fully discuss or adequately apply the

requisite factors to the case at bar, the ALJ's articulated discussion demonstrates otherwise. Finally, Plaintiff's argument that the ALJ did not consider that Plaintiff's statements were consistent with Dr. Rutherford's opinion is unavailing for the reasons discussed above.

As can be seen, the ALJ's decision specifically addresses in great detail not only the medical evidence, but also Plaintiff's testimony and his subjective complaints, clearly indicating that these factors were considered. *Id.* It is clear from the ALJ's detailed articulated rationale that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on findings that were inconsistent with Plaintiff's allegations. This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

After assessing all the objective medical evidence, the ALJ determined that:

> After careful consideration of the evidence, the undersigned finds
> that the claimant's medically determinable impairments could
> reasonably be expected to cause some of the alleged symptoms;
> however, the claimant's statements concerning the intensity,
> persistence and limiting effects of these symptoms are not credible
> to the extent they are inconsistent with the above residual
> functional capacity assessment.

TR 31.

The ALJ observed Plaintiff during his hearing, assessed the medical records, reached a reasoned decision, and articulated the reasons for that decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____

E. CLIFTON KNOWLES
United States Magistrate Judge